# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JAMES E. LEMARR,** | ) | |
| Plaintiff | ) | Civil Action No. 2:22cv00026 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MARTIN J. O'MALLEY,**[1] | ) | |
| **Commissioner of Social Security,** | ) | By: P<small>AMELA</small> M<small>EADE</small> S<small>ARGENT</small> |
| Defendant | ) | United States Magistrate Judge |
| | ) | |

*I. Background and Standard of Review*

Plaintiff, James E. Lemarr, ("Lemarr"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 423 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has requested oral argument; therefore, this case is ripe for decision. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It

---

[1] Martin J. O'Malley, ("O'Malley"), became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rules of Civil Procedure Rule 25(d), O'Malley should, therefore, be substituted for Kilolo Kijakazi as the defendant in this case. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is required to continue this suit.

-1-

consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Lemarr protectively filed his application for DIB[2] on November 16, 2020, alleging disability as of January 1, 2019,[3] based on arthritis in his back; stage four liver cirrhosis; lack of blood platelets; neck pain; and diabetes. (Record, ("R."), at 13, 190-91, 232, 265.) The claim was denied initially and upon reconsideration. (R. at 103-23.) Lemarr then requested a hearing before an

---

[2] Lemarr previously filed an application for DIB on July 31, 2015, alleging disability as of May 15, 2015. (R. at 13, 71.) By decision dated February 7, 2018, the ALJ denied his claim. (R. at 71-78.)

Pursuant to the Fourth Circuit's opinion in *Albright v. Comm'r of Soc. Sec. Admin.,* 174 F.3d 473 (4th Cir. 1999), and in accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same…title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence" and consider its persuasiveness in light of all relevant facts and circumstances. A.R. 00-1(4), 65 Fed. Reg. 1936-01, at *1938, 2000 WL 17162 (Jan. 12, 2000). It is noted that, when *Albright* was decided, the agency "weighed" opinion evidence under different standards. *See* 56 Fed. Reg. 36932-01, at *36960, 1991 WL 142361 (Aug. 1, 1991). Those standards have been superseded by 20 C.F.R. § 404.1520c, which prescribes how to consider persuasiveness of opinion evidence and prior administrative findings in claims made on or after March 27, 2017. Because this claim was made after March 27, 2017, the ALJ is required to consider prior ALJ decisions and Appeals Council findings under *Albright*. *See* Program Operations Manual System, ("POMS"), DI 24503.005, available at https://policy.ssa.gov/poms.nsf/lnx/0424503005 (effective Apr. 13, 2021) (explaining the categories of evidence).

The ALJ in this case noted he reviewed the previous February 2018 decision and found that it generally was consistent with the medical evidence of record at the time of the 2018 decision. (R. at 20.) The ALJ noted that Lemarr had developed additional severe impairments since his prior application, which caused additional manipulative limitations. (R. at 20.)

[3] Lemarr initially alleged an onset date of disability beginning May 15, 2015; however, at his hearing, he amended his alleged disability date to January 1, 2019. (R. at 33.)

-2-

administrative law judge, ("ALJ"). (R. at 124.) The ALJ held a hearing on February 18, 2022, at which Lemarr was represented by counsel. (R. at 29-67.)

By decision dated March 18, 2022, the ALJ denied Lemarr's claim. (R. at 13-23.) The ALJ found Lemarr met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2020. (R. at 16.) The ALJ found Lemarr had not engaged in substantial gainful activity since January 1, 2019,[4] the alleged onset date. (R. at 16.) The ALJ determined that Lemarr had severe impairments, namely, cervical spine degenerative disc disease, status-post fusion; diabetes mellitus; hypertension; obesity; lumbar spine degenerative disc disease; cirrhosis; and right middle finger amputation, but he found Lemarr did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-17.)

The ALJ found that Lemarr had the residual functional capacity to perform light work,[5] except he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes or scaffolds; he could tolerate frequent exposure to hazards such as unprotected heights or moving machinery, but could not tolerate exposure to concentrated heat;[6] he could frequently, but not constantly, handle, finger and feel; and he could occasionally reach overhead with his bilateral upper extremities. (R. at 17.) The ALJ found that

---

[4] Therefore, Lemarr must show he was disabled between January 1, 2019, the alleged onset date, and December 31, 2020, the date last insured, to be eligible for benefits.

[5] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2022).

[6] The hypothetical presented to the vocational expert also indicated the hypothetical individual was unable to perform work with concentrated exposure to hazards such as unprotected heights or moving dangerous machinery. (R. at 58.)

Lemarr was unable to perform his past relevant work. (R. at 21.) Based on Lemarr's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Lemarr could perform, including the jobs of an optical matcher, a hand packager and an inspector.[7] (R. at 21-22, 58-59.) Thus, the ALJ concluded that Lemarr was not under a disability as defined by the Act from January 1, 2019, the amended alleged onset date, through December 31, 2020, the date last insured, and he was not eligible for DIB benefits. (R. at 22-23.) *See* 20 C.F.R. § 404.1520(g) (2022).

After the ALJ issued his decision, Lemarr pursued his administrative appeals, (R. at 291), but the Appeals Council denied his request for review. (R. at 1-6.) Lemarr then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2022). This case is before this court on Lemarr's motion for summary judgment filed April 27, 2023, and the Commissioner's motion for summary judgment filed May 23, 2023.

## II. Facts

Lemarr was born in 1972, (R. at 21, 190), which, at the time of the ALJ's decision, classified him as a "younger person" under 20 C.F.R. § 404.1563(c). Lemarr has a high school education and past work experience as a tank truck driver and a tractor trailer truck driver. (R. at 34, 58, 233.) Lemarr testified that he had pain in his hips, lower and upper back, knees and neck, as well as leg numbness. (R. at

---

[7] In addition, the ALJ found Lemarr could perform the sedentary jobs of a gauger, a processor and a weight tester. (R. at 22.)

37.) He stated that walking exacerbated his pain, and around the time of his date last insured, he could walk between five and 10 minutes without interruption. (R. at 38.) Lemarr explained that walking for longer periods caused him pain and numbness in his lower back and knees. (R. at 38.) He further claimed he could stand in one place for about five minutes at a time before experiencing worsening pain, and he could sit upright for about five to 10 minutes without interruption. (R. at 39.) Lemarr stated he could lift items weighing up to four pounds, he had little grip strength in his left hand due to left arm numbness, and he had difficulty picking up items because the fingertip of his right middle finger had been amputated. (R. at 40-41.) He stated he had high blood pressure and diabetes prior to his date last insured, which caused nausea, dizziness and headaches, which were exacerbated by heat. (R. at 42-43.) Lemarr stated he used a walking stick for balance and to help him stand up. (R. at 50.)

In rendering his decision, the ALJ reviewed records from Dr. Joseph Duckwall, M.D., a state agency physician; Dr. Daniel Camden, M.D., a state agency physician; Dr. Sung-Joon Cho, M.D.; Holston Valley Medical Center; Livesay Family Medicine, P.C.; Tennessee Cancer Specialists; Wellmont Medical Associates; Holston Valley Medical Center; Blue Ridge Neuroscience Center, P.C.; Claiborne Medical Center; and University Urology, P.C.

Lemarr has a history of cervical spine degenerative disc disease and was found to have moderate to severe foraminal stenosis in his cervical spine. (R. at 604.) In September 2016, Lemarr underwent a partial C7 sternotomy with corpectomy, arthrodesis and anterior fixation. (R. at 392-402.) At his follow-up appointments, Lemarr reported he was doing well, stating that his left arm and left upper back pain had resolved, but he had muscle spasm along the back of his neck and into his

shoulders with mild numbness in his left hand. (R. at 317, 322, 329, 387, 711.) Lemarr's gait was nonantalgic; he had normal muscle strength and tone; he had no atrophy in his bilateral upper extremities; he had normal coordination; and he had hypesthesia in a left C8 distribution. (R. at 319, 324.) Lemarr reported his medications allowed him to remain functional with his activities of daily living. (R. at 329.) It was noted that Lemarr had no further need for additional surgical intervention. (R. at 319, 324.)

From January 2019 through December 2021, Dr. Tom D. Livesay, M.D., and various nurse practitioners at Livesay Family Medicine, P.C., saw Lemarr for low back and neck pain; hypertension; diabetes; hyperlipidemia; thrombocytopenia;[8] nonalcoholic steatohepatitis; and obesity. (R. at 828, 833, 846, 858, 866, 871, 875, 881, 886, 891, 898, 903, 908, 930, 937.) In January 2020, Dr. Livesay noted that Lemarr's recent urine drug screen showed methamphetamine,[9] and he advised Lemarr that the next time his drug screen was not in order, his prescription for opiates would be discontinued. (R. at 869, 874.) Throughout this time period, Lemarr stated his medication regimen controlled his pain,[10] allowed him to remain functional and made his quality of life tolerable and acceptable, and, in May 2021, he reported his quality of life was good.[11] (R. at 828, 833, 839, 886, 891, 908, 930, 937, 977.) Lemarr's examination findings showed his neck was stiff with decreased

[8] Thrombocytopenia is a condition that occurs when the blood platelet count is too low. *See* https://www.nhlbi.nih.gov/health/thrombocytopenia (last visited Jan. 16, 2024).

[9] Lemarr stated that he traded his Kool cigarette for a roll-your-own cigarette that was rolled by the renter on his property. (R. at 869.)

[10] In May and July 2020, Dr. Livesay reported that Lemarr's cervicalgia and low back pain were stable. (R. at 831, 979.)

[11] In December 2021, Lemarr reported less than tolerable pain and stated some activities of daily living were difficult to perform. (R. at 951.) Lemarr's examination findings remained unchanged. (R. at 951.)

range of motion; his gait, muscle tone and strength were normal; his lumbar spine had tenderness to palpation with decreased range of motion; his cervical spine had tenderness to palpation; he had normal movement of all extremities; he had tenderness of the iliolumbar region, bilaterally; and, at times, he had slightly decreased sensation in both feet. (R. at 830, 836, 841-42, 853-54, 860-61, 868, 873, 877-78, 883, 888, 893-94, 900, 905, 910-11, 932, 939, 967, 973, 978, 984, 989, 1002, 1007.) It was recommended that Lemarr alternate cold packs and moist heat for pain relief and perform home back strengthening exercises. (R. at 838, 849, 856, 864, 912.)

On February 25, 2020, Lemarr saw Dr. Richard T. Lee, M.D., a physician with Tennessee Cancer Specialists, for evaluation of progressive thrombocytopenia. (R. at 355.) Lemarr complained of arthralgia, but denied muscle weakness, joint swelling and bone pain. (R. at 356.) Dr. Lee ordered an ultrasound of Lemarr's liver and spleen, which later showed possible hepatic cirrhosis. (R. at 357-58.) On March 24, 2020, Lemarr denied arthralgias, muscle weakness, joint swelling and bone pain. (R. at 353.) He rated his pain level at zero. (R. at 353.) Lemarr's blood pressure reading was 160/96. (R. at 353.) Lemarr was ambulatory and reported he was capable of all self-care, but stated he was unable to carry out any work activities. (R. at 353.) Dr. Lee opined Lemarr's thrombocytopenia was related to his splenomegaly in the setting of nonalcoholic fatty liver disease and cirrhosis. (R. at 354.) Dr. Lee noted there was little he could offer and recommended Lemarr have a liver transplant consultation. (R. at 354.)

On May 12, 2021, Dr. Joseph Duckwall, M.D., a state agency physician, reviewed the medical record and determined there was insufficient evidence to make

a residual functional capacity determination for the relevant time period. (R. at 88-89.)

On June 18, 2021, Dr. Daniel Camden, M.D., a state agency physician, completed a medical assessment, finding Lemarr could perform light work. (R. at 95.) He found Lemarr could sit, stand and/or walk six hours each in an eight-hour workday. (R. at 95.) Dr. Camden indicated no postural, manipulative, visual, communicative or environmental limitations. (R. at 95.) Dr. Camden based his assessment on the prior ALJ's finding that Lemarr could perform light work; that it was consistent with Lemarr's cervical spine history and surgery; and his diagnoses of obesity and diabetes, which likely caused added fatigue. (R. at 95.) Dr. Camden noted that these diagnoses alone were not sufficient to limit him further. (R. at 95.) In addition, Dr. Camden noted Lemarr's diagnosis of thrombocytopenia secondary to presumed nonalcoholic liver disease. (R. at 95.) He noted that Lemarr reported no hospitalizations, hemorrhaging, ascites or need for paracentesis and appeared to have been stable through his date last insured. (R. at 95.)

On January 3, 2022, Lemarr presented to the emergency room at Claiborne Medical Center for complaints of urinary problems. (R. at 1019-36.) Chest x-rays showed no cardiopulmonary findings. (R. at 1025.) Upon examination, Lemarr's neck and back had full range of motion with no tenderness; he had 3+ edema in the bilateral lower extremities; and his bladder was distended with moderate tenderness. (R. at 1033.) Lemarr was diagnosed with acute cystitis with hematuria; enlarged prostate with lower urinary tract symptoms; localized edema; and retention of urine, unspecified. (R. at 1029.) His symptoms improved with medication. (R. at 1033.)

On February 1, 2022, Lemarr saw Dr. Wesley M. White, M.D., a urologist with University Urology, P.C., for evaluation of urinary retention. (R. at 1016.) Dr. White diagnosed hematuria microscopic, asymptomatic; and benign prostatic hyperplasia with urinary obstruction. (R. at 1016.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2022). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2022).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Lemarr filed his application in November 2020; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions here.[12] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimant's medical sources. 20 C.F.R. § 404.1520c(a) (2022). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. § 404.1520c(b), (c)(1)-(5) (2022) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 404.1520c(b)(1) (2022).

---

[12] 20 C.F.R. § 404.1520c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[13] *See* 20 C.F.R. § 404.1520c(b)(2).

Lemarr's sole argument on appeal is that the ALJ erred by failing to give appropriate credence to his testimony and properly assess the effect of pain on his ability to perform substantial gainful activity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-5.)

Lemarr argues that his testimony that he suffers from severe and chronic daily pain, making it impossible for him to sit, stand, walk or concentrate for prolonged periods, is supported by the objective medical evidence and his continued treatment

---

[13] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(3) (2022).

for chronic pain. Lemarr argues that the ALJ failed to properly consider his testimony. Contrary to Lemarr's argument, the Commissioner contends that substantial evidence supports the ALJ's finding that Lemarr's allegations of disabling, chronic back pain are not entirely consistent with the medical and other evidence of record. As the Commissioner stated in his brief, apart from his hearing testimony, Lemarr did not cite to record evidence that would support further limitations or otherwise undermine the ALJ's decision.

The Fourth Circuit recently reiterated the two-step framework, set forth in 20 C.F.R. § 404.1529 and Social Security Ruling, ("S.S.R."), 16-3p, 2017 WL 5180304 (Oct. 25, 2017), for evaluating a claimant's symptoms, such as pain.[14] *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020). First, the ALJ must determine whether objective medical evidence[15] presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. *Arakas*, 983 F.3d at 95 (citations omitted); *see also Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether he is disabled. *See Arakas*, 983 F.3d at 95 (citations omitted); *see also Craig*, 76 F.3d at 595. Because "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques," ALJs must consider the entire case record and may "not disregard an individual's statements about the intensity,

---

[14] "Symptoms" are defined in the regulations as a claimant's own description of his medical impairment. *See* 20 C.F.R. § 404.1502(i) (2022).

[15] The regulations define "objective medical evidence" as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2) (2022).

persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. S.S.R. 16-3p, 2017 WL 5180304, at *5; *see also* 20 C.F.R. § 404.1529(c)(2); *Craig*, 76 F.3d at 595. In other words, "while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *see also Craig*, 76 F.3d at 593.

However, the Fourth Circuit has held that objective medical evidence and other objective evidence are "crucial" in evaluating the second prong of the symptom analysis test. *Craig*, 76 F.3d at 595. In *Craig*, the Fourth Circuit stated, "[a]lthough a claimant's allegations about his pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges he suffers." 76 F.3d at 595. Specifically, the ALJ must consider "any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [his medical] history, the signs and laboratory findings, and statements by [his] medical sources or other persons about how [his] symptoms affect [him]." 20 C.F.R. § 404.1529(c)(4) (2022). The regulations direct that a claimant's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

Here, the ALJ stated as follows in his decision:

> … [T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p.
>
> … In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable … impairment[s] … that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying … impairment[s] that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(R. at 17-18.) In his decision, the ALJ found that the objective findings did not corroborate the allegations to the disabling extent as asserted by Lemarr. (R. at 18.) The ALJ noted that Lemarr's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Lemarr's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. at 18.) Specifically, the ALJ found that Lemarr's testimony that he could walk and stand for only five-to-10-minute intervals, he could not carry items weighing more than three to four pounds, he experienced constant numbness of his left upper extremity, and he required a cane for ambulation was inconsistent with the record evidence that indicated a greater level of functioning. (R. at 18-19.)

The ALJ next turned to an analysis of Lemarr's symptoms, stating, in part, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. …" (R. at 18.) Thus, the ALJ satisfied the first part of the two-part test for analyzing Lemarr's allegations about his symptoms. *See Arakas*, 983 F.3d at 95; *Craig*, 76 F.3d at 594. The real issue, therefore, is whether he correctly analyzed Lemarr's pain under the second part of this test. For the reasons that follow, I find that he did.

In his decision, the ALJ stated, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 18.) To support this finding, the ALJ first summarized Lemarr's testimony and reports to the agency claiming disabling functional limitations and pain, including his claims that he had limited activities of daily living. (R. at 18.) The ALJ acknowledged Lemarr's history of cervical spine surgery and medication pain management. (R. at 18.) The ALJ noted that, while Lemarr's cervical spine surgery appeared to have been successful, he continued to experience chronic pain in his cervical spine, as well as cervical radiculopathy, and had been prescribed opioid medication for pain management. (R. at 18.) Lemarr routinely reported his medication regimen controlled his pain, allowed him to remain functional and made his quality of life tolerable and acceptable. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ then discussed the objective medical evidence of record, as well as Lemarr's treatment history and medication regimen, which consistently showed that

Lemarr displayed normal strength and mobility during treatment visits, and despite complaints of chronic neck and back pain, there was no indication that he was a candidate for additional surgery or other aggressive interventions. (R. at 18.) For example, during the relevant period, treatment records consistently showed that, despite experiencing reduced range of motion and chronic cervical and lumbar back pain, Lemarr's main treatment was with medication, and his physical examinations typically revealed normal muscle strength and gait; intact or only slightly diminished sensation; normal neurological testing; and no edema. The ALJ noted that there was no indication in the medical record that Lemarr required a cane or other assistive device for ambulation. (R. at 17, 19.) The record shows that two weeks after the relevant period, Lemarr ambulated normally with no assistive device. (R. at 1007.) At that time, Lemarr continued to report that he was able to perform his activities of daily living; he had a "tolerable" quality of life; and he had normal activity level with no fatigue, nausea, vomiting, swelling, weakness, headache or dizziness. (R. at 1007.)

In making his residual functional capacity finding, the ALJ found the opinion of the reviewing state agency physician, Dr. Camden, generally consistent with the evidence of record, which established that Lemarr was able to perform a range of light work. (R. at 20.) The ALJ found that Dr. Camden's assessment did not sufficiently account for the limitations caused by Lemarr's impairments in determining his postural, manipulative and environmental capabilities. (R. at 20.) As a result, the ALJ found Dr. Camden's opinion generally persuasive, but not persuasive as to Lemarr's nonexertional limitations. (R. at 20.). The ALJ discounted Dr. Sung-Joon Cho's 2015 consultative examination[16] findings because they were

---

[16] On November 5, 2015, Dr. Cho examined Lemarr at the request of Disability Determination Services. (R. at 294-98.) On examination, Lemarr's blood pressure was elevated; his neck was supple; his cardiovascular exam was normal; he had palpable radial and dorsalis pedis

remote in time to the relevant period, but he ALJ found persuasive Dr. Cho's examination findings because they were generally consistent with the record showing Lemarr was capable of significantly greater physical exertion than he claimed. (R. at 20.) The ALJ did not find persuasive Dr. Duckwall's opinion because the record evidence available at the hearing level established that Lemarr had the severe impairments and related limitations as discussed in his decision. (R. at 20.)

For all the above-stated reasons, I find that the ALJ did not improperly disregard Lemarr's statements about his pain. To the contrary, the ALJ thoroughly considered such statements and credited them to the extent they were consistent with the record as a whole. As stated herein, in making the determination at the second prong of the symptom evaluation framework, the ALJ must examine the entire case record, including the objective medical evidence, the claimant's statements about the intensity, persistence and limiting effects of his symptoms, statements and other information provided by medical sources and other persons and any other relevant evidence in the claimant's record. *See* S.S.R. 16-3p, 2017 WL 5180304, at *4. Here, the ALJ reviewed Lemarr's relevant medical history and his subjective allegations before finding his statements regarding the severity of his limitations were not entirely credible because they were not fully supported by the objective medical evidence and his treatment history. The ALJ was entitled to find that the objective

---

pulses; he walked somewhat slowly without any assistive device, but was a "bit" short-winded when walking, as he was obese; he tandem walked "a little bit slower and cautious;" his grip strength was 5/5 in both hands; his straight leg raising tests were negative; he had normal motor function in the upper and lower extremities; he had limited range of motion of the lumbar spine and shoulders; he had intact sensation; and he had no focal myalgic tenderness, swelling, joint inflammation or deformity. (R. at 295-96.) Dr. Cho opined Lemarr could stand and walk for four hours due to his blood pressure; he had no limitations on his ability to sit; he could occasionally lift and carry items weighing 30 pounds and 10 pounds frequently once his blood pressure was better controlled; he could occasionally climb, balance, stoop, kneel, crouch, crawl and reach; and he had no limitations on his ability to handle, finger and feel. (R. at 297.)

medical evidence outweighed Lemarr's subjective statements, and he provided a sufficient rationale for doing so. It is well-supported that a reviewing court gives great weight to an ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence of record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). Here, the ALJ's decision was thorough and applied the proper legal standard, and this court will not reweigh the evidence.

For all the foregoing reasons, I find that the ALJ's evaluation of Lemarr's pain was based on a correct legal standard and is supported by substantial evidence. Based on the same evidence stated above, I further find that substantial evidence supports the ALJ's residual functional capacity finding and ultimate finding that Lemarr was not disabled under the Act and not entitled to benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's analysis of Lemarr's subjective complaints of pain;

2. Substantial evidence exists in the record to support the ALJ's consideration of the opinion evidence;

3. Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

4. Substantial evidence exists in the record to support the Commissioner's finding that Lemarr was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Lemarr's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    January 16, 2024.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE